UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
NEWRIVER, INC.,                 )
            Plaintiff           )
                                )
v.                              )      CIVIL ACTION
                                )      NO. 06-12146-WGY
NEWKIRK PRODUCTS, INC.,         )
            Defendant           )
_____)

MEMORANDUM OF DECISION
AND ORDER

YOUNG, D.J.                              December 16, 2009

> **"The forms of action we have buried,"** wrote
> **the great legal historian Frederick W.**
> **Maitland.  "But,"** he added, **"they still rule**
> **us from their graves."**[1]

This case illustrates that, despite the unequivocal command of

Federal Rule of Civil Procedure 2 that "there is one form of action

- the civil action," there is, for good or ill, another - the

patent case.

I.    INTRODUCTION AND PROCEDURAL HISTORY

The plaintiff NewRiver, Inc. ("NewRiver") brought a patent

infringement and breach of contract action against the defendant

Newkirk Products, Inc. ("Newkirk").  NewRiver is the owner and

_____

[1] As quoted by Hon. Hiller B. Zobel, Reflections of the
Justices 24 (2009).

assignee of the United States Patent No. 6,122,635 (the "'635 Patent") for the Mapping Compliance Information Useable Format. The invention pertains to a computer-assisted method for manipulating securities information in the United States Securities and Exchange Commission ("SEC") Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") database to extract only certain information, such as mutual fund prospecti. See '635 Patent col.1 l.6-12 (filed Feb. 13, 1998).

On April 7, 2009, the jury returned a verdict finding that Newkirk infringed claims 9-11, that its infringement was not willful, but that certain of the claims in suit, specifically including the crucial claims 9-11 which had been found infringed, '635 Patent claims 1, 3-5, and 8-11, were invalid as obvious. Jury Verdict (Doc. No. 301). In addition, the jury found that Newkirk did not breach its contract with NewRiver. Id.

On April 22, 2009, Newkirk, having achieved a clean sweep with the jury but apparently enamored of a true belt and suspenders approach, filed a renewed motion for judgment as matter of law that it did not infringe '635 patent claims 9-11 (Doc. No. 305), and filed a motion for judgment as matter of law that '635 patent claims 6, 13-15, and 19-21 are invalid (Doc. No. 308). On April 23, 2009, NewRiver filed three motions: 1) a motion for judgment as matter of law that '635 patent claims 9-11 are valid and not obvious (Doc. No. 312); 2) a motion for

2

judgment as matter of law that Newkirk infringes '635 patent claims 13-15 and 19-21 (Doc. No. 315); and 3) a motion for a new trial. (Doc. No. 317).

## II.  BACKGROUND

The '635 patent was issued to NewRiver's predecessor, InUnity Corp., on September 19, 2000.  '635 Patent, at [45] (filed February 13, 1998).  The '635 patent is a system for providing access to compliance information acquired from securities database sources.  Id. at [57].  According to the '635 patent, compliance information for a mutual fund can include, but is not limited to, mutual fund prospecti and their supplements, statements of additional information and their supplements, annual and semi-annual reports, as well as certain sales and marketing information.  '635 Patent col.3 l.2-13.

The patented system extracts compliance information, e.g., a mutual fund prospectus, from the specific fund, and provides access through a subsystem to a computer-readable file of the extracted compliance information.  '635 Patent, at [57].  The patented system performs a series of functions.  It acquires data from documents in the database associated with a particular fund company using a code called a "central index key" (matching funds to a particular stock ticker or Committee on Uniform Security Identification Procedures ("CUSIP") identifier).  '635 Patent col.11 l.20-25.  The patented system searches the data to

identify and extract compliance information.  '635 Patent col.11
l.27-32.  It also determines the operative or "effective" date of
the compliance information and whether it supersedes older
compliance information.  '635 Patent col.11 l.35-41.  The
patented system catalogs the compliance information it has
extracted.  '635 Patent col.11 l.60-66.  The patented system
stores the processed compliance information and makes the
compliance information accessible to users via a network
connection.  '635 Patent col.13 l.4-10.

Patentee NewRiver alleges that the two parties entered into
a binding contract on January 31, 2001 for NewRiver to provide
certain electronic securities information obtainment and delivery
services.  Compl. ¶¶ 6-8 (Doc. No. 1).  NewRiver further alleges
that since the contract's termination, Newkirk has breached the
contract provisions and infringed the '635 patent through selling
products and services to third parties that generate filings from
the SEC EDGAR database in violation of the '635 patent.  Compl.
¶¶ 9-10, 17.  Newkirk offers a service called Newkirk Fund
Central which "facilitates access to information filed with the
SEC" but otherwise denies that it infringes NewRiver's '635
patent.  Answer ¶ 17 (Doc. No. 11).  Newkirk raised affirmative
defenses including non-infringement and invalidity.

III. **ANALYSIS**

   A.   **Judgment As Matter of Law**

   The evidence required to sustain a jury verdict is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1379 (Fed. Cir. 2009).

   A party requesting judgment as matter of law "must show that substantial evidence did not support the jury's findings, where substantial evidence is 'such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review.'" Koito Manufacturing Co., Ltd. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1149 (Fed Cir. 2004) (quoting Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1563 (Fed. Cir. 1996)). "Substantial evidence is 'more than a mere scintilla' and is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd., 558 F.3d 1341, 1349 (Fed. Cir. 2009) (quoting z4 Technologies, Inc. v. Microsoft Corp., 507 F.3d 1340, 1353 (Fed. Cir. 2007)). "The Court must also consider all the evidence before the jury and draw all reasonable inferences from the evidence in the light most favorable to the prevailing party on that issue, i.e., the non-movant." Koito, 381 F.3d at 1149.

Theoretically, each of the cases cited above ought stand for the same proposition.  In practice, they may not, though the distinction is subtle and unacknowledged.  The distinction appears to have crept in since the Federal Circuit has concluded that general and conclusory testimony "does not suffice as substantial evidence of invalidity."  <u>Koito</u>, 381 F.3d at 1152.

### B.   Infringement of Claims 13-15 & 19-21

#### 1.   Standard for Infringement

Infringement analysis requires two steps.  First, the court must construe the claims to determine their scope and meaning.  <u>Markman</u> v. <u>Westview Instr., Inc.</u>, 52 F.3d 967, 976, <u>aff'd</u>, 517 U.S. 370 (1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  <u>Phillips</u> v. <u>AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (<u>quoting</u> <u>Innova/Pure Water, Inc.</u> v. <u>Safari Water Filtration Systems, Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  This Court construed the '635 patent claims in related litigation and issued its Markman Order on March 21, 2007.  <u>NewRiver, Inc.</u> v. <u>Mobular Technologies, Inc.</u>, 478 F. Supp. 2d 158, 162-64 (D. Mass. 2007).  On May 28, 2008, the Court ruled that its March 21, 2007 <u>NewRiver</u> v. <u>Mobular</u> claim construction would govern.  "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of

trial." <u>Exergen Corp.</u> v. <u>Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

Next, the analysis compares the properly construed claims to the accused product or process to assess whether each of the claim limitations is met, either literally or equivalently, in the alleged infringing invention. <u>CCS Fitness, Inc.</u> v. <u>Brunswick Corp.</u>, 288 F.3d 1359, 1365 (Fed. Cir. 2002). Patents may be infringed either literally or under the doctrine of equivalents. <u>Carnegie Mellon University</u> v. <u>Hoffmann-La Roche Inc.</u>, 541 F.3d 1115, 1129 (Fed. Cir. 2008). NewRiver's expert testimony fell short of the evidentiary requirements for proof of infringement under the doctrine of equivalents and the Court thus removed the doctrine of equivalents from the jury's consideration. Compare this case with <u>Amgen Inc.</u> v. <u>F. Hoffman-La Roche Ltd.</u>, 581 F. Supp. 2d 160, 205 (D. Mass. 2008), where this Court followed precisely the same procedure for precisely the same reason. The Federal Circuit approved.[2] Thus, in this case, the jury only

_____

[2] As the Federal Circuit held:

[T]he district court excluded . . . proffered expert testimony on equivalents because it lacked a limitation-by-limitation comparison.

. . . .

To support a finding of infringement under [the doctrine of equivalents, the patent holder] must have presented, on a limitation-by-limitation basis, "particularized testimony and linking argument as to the 'insubstantiality of the differences' between [the

considered literal infringement and found challenger Newkirk

infringed on '635 Patent claims 9-11, albeit not willfully.

> 2. The Jury's Verdict of Non-Infringement of '635
>    Patent Claims 13-15 and 19-21 is Supported by
>    Substantial Evidence

NewRiver moved for judgment as matter of law that Newkirk

infringes '635 patent claims 13-15 and 19-21.  The limitations in

claims 13-15 are related to NewRiver's computer-readable data

storage device comprising computer executable instructions which

assist a human operator in performing a series of steps including

identifying a subset of recently submitted filing documents and

extracting compliance information from the EDGAR database.

Claim 13 recites:

---

devices] . . . with respect to the function, way, result test." Texas Instruments v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed. Cir. 1996).  "[E]vidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 1425 (Fed. Cir. 1989); see also Texas Instruments, 90 F.3d at 1567 ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.").  But see Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1305 (Fed. Cir. 2007) ("Our 'particularized testimony' standard does not require [the expert] to re-start his testimony at square one when transitioning to a doctrine of equivalents analysis.").  These requirements "ensure that a jury is provided with the proper evidentiary foundation from which it may permissibly conclude that a claim limitation has been met by an equivalent." Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1188 (Fed. Cir. 1998).

Amgen Inc. v. Hoffman-La Roche Ltd., 580 F.3d 1340, 1382 (Fed. Cir. 2009).

A computer-readable data storage device comprising computer executable instructions for execution on a computer to cause the computer to aid an operator in performing the steps of:

identifying a subset of filing documents that were recently added to a regulatory filing document database; searching each of the subset of documents for compliance information; recording document identifiers for any of the subset of documents containing the compliance information; extracting the compliance information from each of the subset of documents containing the compliance information by (i) marking the lines of text in the document containing the compliance information,(ii) identifying a start line and an end line of the compliance information, and (iii) copying the compliance information starting at the start line and ending at the end line; and storing the extracted compliance information.

Newkirk presented evidence that its system does not literally meet each of the claim limitations. There is undisputed testimony that compliance information in the Newkirk system resides in the system's random access memory ("RAM") on a temporary basis. Trial Tr. vol. 7, 837:10-18, 845:11-15, 899:24-900:5, 901:9-15, Mar. 24, 2009; Trial Tr. vol. 8, 978:23-979:25, Mar. 25, 2009. This RAM is not accessible to other computers and the information residing in Newkirk system's RAM is lost when new information is brought in, the browser is closed, the computer is turned off, or power is interrupted. Trial Tr. vol. 7, 838:11-18, 901:9-15, Mar. 24, 2009; Trial Tr. vol. 8, 940:3-8, Mar. 25, 2009. NewRiver nonetheless contends that this temporary depositing of information into RAM constitutes storage and thus meets the "storing the extracted

compliance information" limitation of claim 13.

Challenger Newkirk provided expert testimony, however, that would support a jury finding that its system does not store compliance information. Dr. Szymanski, Newkirk's expert witness, testified that the system does not perform the storing limitation because putting information in RAM does not constitute "storing." Trial Tr. vol. 8, 978:23-979:25, Mar. 25, 2009. Dr. Szymanski further testified that Newkirk's system does not infringe on NewRiver's claims because its system's Segment Analyzer does not extract compliance information from EDGAR as provided by the extracting limitation of claim 13. Id. at 973:9-15.

The Court is not to evaluate whether or not it might have reached a conclusion contrary to that of the jurors, but rather to focus on whether the outcome is against the clear weight of the evidence such that upholding the verdict would result in a miscarriage of justice. Conway v. Electro Switch Corp., 825 F.2d 593, 598-99 (1st Cir. 1987). Under this standard, Newkirk's evidence is sufficient to support the jury's conclusion that it did not infringe on claims 13-15 and 19-21 and NewRiver's motion to rule to the contrary is denied.

3. The Jury Verdict of Infringement of the '635 Patent Claims 9-11 is Supported by Substantial Evidence

Newkirk asserts that no reasonable jury could conclude that it infringes claims 9-11, either literally or under the doctrine of equivalents. Substantial evidence supports the jury's finding

that Newkirk infringes claims 9-11.  Newkirk's own witnesses and documents acknowledge that Newkirk provides users with access to prospecti and other items of compliance information obtained from the SEC database.  Newkirk's own expert conceded that Newkirk's system: (1) sends a user Newkirk software and data over the Internet, (2) derives the desired compliance information from the raw EDGAR filing on the user computer using Newkirk software, and (3) displays the derived complaince information to the user.  Trial Tr. vol. 8, 987-992, Mar. 25, 2009.  Newkirk's own promotional materials advertise its ability to extract compliance information from the SEC, providing circumstantial evidence supporting a finding of infringement of the disputed claim limitations.  Further, NewRiver submitted expert testimony that indicated how Newkirk's system infringes each of the disputed claim limitations.  Trial Tr. vol. 7, 790-797, Mar. 24, 2009.

The evidence on record is sufficient to maintain the jury's verdict that claims 9-11 were infringed.  Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1220 (Fed. Cir. 2006) (affirming trial court's denial of defendant's JMOL of non-infringement where "the jury could have reasonably inferred from the evidence submitted that each of the tanks infringed the claims").  Circumstantial evidence from defendant's own promotional materials also supports the jury's verdict.  Snuba International, Inc. v. Dolphin World, Inc., No. 99-1357, 2000 WL

961363, at *5-6 (Fed. Cir. July 11, 2000) (given circumstantial evidence which included statements from defendant's own promotional materials, court held reasonable jury could find infringement).

Newkirk's motion for a required finding of non-infringement is therefore denied.

### C.   Invalidity

#### 1.   Standard for Invalidity Based on Obviousness

A patent may be invalidated for obviousness under 35 U.S.C. § 103.[3]  In <u>Graham</u> v. <u>John Deere Co. of Kansas City</u>, 383 U.S. 1, 17-18 (1966), the Supreme Court established the framework for determining obviousness under the section 103 analysis.  The Court conducts the following analysis to determine invalidity under section 103: 1) it determines the scope and content of the prior art; 2) ascertains the differences between the prior art and the claims at issue; 3) assesses the level of ordinary skill in the pertinent art; and 4) determines whether a person with the ordinary skill in the pertinent art would have found the patent

---

[3] 35 U.S.C. § 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

obvious in context of the prior art references.  <u>KSR</u>
<u>International Co.</u> v. <u>Teleflex Inc.</u>, 550 U.S. 398, 406-07 (2007).

The Federal Circuit utilizes the "teaching, suggestion, or
motivation" ("TSM") test to streamline analysis of patent
invalidity based on obviousness.  <u>Id.</u> at 399.  Under the TSM
test, a patent claim is only proven obvious "if the prior art,
the problem's nature, or the knowledge of a person having
ordinary skill in the art reveals some motivation or suggestion
to combine the prior art teachings."  <u>Id.</u>  A patent consisting of
multiple elements is not invalidated as obvious merely because
each of those elements were known individually in prior art.  <u>Id.</u>
at 418.

Persons of ordinary skill frequently combine the insights of
previous patents, including uses beyond the patents' stated or
primary purposes.  "If a person of ordinary skill can implement a
predictable variation, § 103 likely bars its patentability."  <u>Id.</u>
at 417.  Therefore, a patent claim can be proved obvious by
demonstrating that the combination of elements in the claim would
have been sensible for a person of ordinary skill based on
preexisting prior art.  "In determining obviousness, the
invention must be considered as a whole without the benefit of
hindsight, and the claims must be considered in their entirety."
<u>Rockwell International Corp.</u> v. <u>United States</u>, 147 F.3d 1358,
1364 (Fed. Cir. 1998).

A patent challenger must demonstrate that both independent and dependent claims are invalid.  "Because dependent claims contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found."  <u>Sandt Technology, Ltd.</u> v. <u>Resco Metal and Plastics Corp.</u>, 264 F.3d 1344, 1356 (Fed. Cir. 2001).

        2.   The Verdict on the Nonobviousness of Claims 6, 13-15, and 19-21 is Supported by Substantial Evidence

Newkirk moves for judgment as matter of law that '635 patent claims 6, 13-15, and 19-21 are invalid as obvious.  Newkirk asserts that based on the evidentiary record and the prior art no reasonable jury could conclude that claims 6, 13-15, and 19-21 are valid.  The prior art references submitted into evidence at trial include: NYU Filing Retrieval Toolkit (Heslin Decl., Ex. E, Trial Ex. 198); LookSmart Document (Heslin Decl., Ex. D, Trial Ex. 199); Word Perfect Mini-Manual (Heslin Decl., Ex. F, Trial Ex. 200); Google Book Search (Heslin Decl., Ex. I, Trial Ex. 201); EDGAR Today Article (Heslin Decl., Ex. K, Trial Ex. 202); Edgar to Word Perfect Wizard (Heslin Decl., Ex. G, Trial Ex. 204); and the '635 Patent (Heslin Decl., Ex. H, Trial Ex. 1).  In addition, Newkirk relies primarily on the trial testimony of Dr. Mark Ginsburg, and its validity expert, Dr. Boleslaw Szymanski. Newkirk contends that the prior art references and testimony demonstrate that various entities, including publicly available

14

sources, offered search tools that provided users the ability to search within the EDGAR database for specific filings and custom extraction of the data into word processing formats.

The prior art references teach elements of the disputed claim limitations.  The prior art teaches that methods for searching the EDGAR database were publicly available before the patented invention.  Web users could filter the data on the NYU index using various criteria including the name of the company, date range, or the form type, e.g., annual report.  Trial Tr. vol. 2, 81:13-19, Mar. 17, 2009.  The testimony of Dr. Ginsburg combined with the NYU Filing Retrieval Toolkit (Heslin Decl., Ex. E, Trial Ex. 198) and the EDGAR Today Article (Heslin Decl., Ex. K, Trial Ex. 202) make clear that users could search the EDGAR database using a variety of key words or targets including name of company, date range of filing, and type of form, including prospectuses.  Notably, NYU offered public users the ability to search exclusively for prospecti.  Trial Tr. vol. 2, 83:12-14, Mar. 17, 2009.  Moreover, the prior art references and testimony demonstrate that users could access specific forms and filings, including prospecti, via computer communications links, such as hyperlinks.  These links would send users directly to the specified forms or data within the EDGAR database.

"The scope and content of the prior art are factual questions to be determined by the jury."  Kinetic Concepts, Inc.

15

v. <u>Blue Sky Medical Group, Inc.</u>, 554 F.3d 1010, 1019 (Fed. Cir. 2009).  The jury verdict's finding of nonobviousness for claims 6, 13-15, and 19-21 is supported by substantial evidence.  None of the prior art references supply the key limitations found in the disputed claim limitations, namely, none of the prior art references disclose or practice the extraction, cataloguing, sub-splitting, or determining the effectiveness date of compliance information from EDGAR.  Moreover, none of the witnesses provided by Newkirk, including Ginsburg and their validity expert, Szymanski, testified that the prior art disclosed the limitations of claims 6, 13-15, and 19-21.  When he testified about the invalidity of claims 6, 13-15, and 19-21, although Dr. Szymanski concluded that in his opinion each of these claims were obvious in light of prior art for persons of ordinary skill in the art, he neglected to point to specific prior art references, discuss how these references differed from the disputed claim limitations or explicate how the combination of these references would have rendered the claimed method obvious to a person of ordinary skill in the art.  "[M]ere identification in the prior art of each element is insufficient to defeat the patentability of the combined subject matter as a whole."  <u>In re Kahn</u>, 441 F.3d 977, 986 (Fed. Cir. 2006).

Furthermore, the jury's finding of nonobviousness for claims 6, 13-15, and 19-21 is supported by the secondary considerations.

NewRiver offered sufficient evidence of each aspect of secondary considerations, especially the long-felt need and commercial success of the product that embodies the patented invention.   See Trial Tr. vol. 4, 376-79, 395-96, Mar. 18, 2009.

       3.   The Verdict on the Invalidity of Claims 9-11.

While the jury's findings of non-obviousness for claims 6, 13-15, and 19-21 are amply supported by the evidentiary record, the invalidity findings for claims 9-11 present a much closer question.  Challenger Newkirk contends that the prior art references' scope and content make it apparent that the limitations of the '635 patent claims 9-11 were disclosed or made obvious to a person of ordinary skill in the art.

The '635 Patent claims 9-11 center on the creation of an obtainment subsystem and accessing subsystem for the extraction and delivery of compliance data from the EDGAR securities database.  Newkirk contends that besides the expert testimony, the jury verdict is supported by substantial evidence that the limitations of claims 9-11 are disclosed by NewRiver's predecessor product Digital Direct.  NewRiver however, presented evidence that Digital Direct did not disclose the disputed claim limitations.  NewRiver's witnesses provided undisputed testimony that Digital Direct included compliance information from its clients and did not derive such data from EDGAR at all.  Trial Tr. vol. 3, 330:6-11, Mar. 18, 2009.

NewRiver's argument for judgment as matter of law on the non-obviousness of claims 9-11 rests primarily on the testimony of the challenger's validity expert.  The expert testimony regarding claims 9-11 is sparse in detail.  For each of these claims, Dr. Szymanski merely reads the claim into evidence and concludes that in his opinion, the claims would have been obvious to a person skilled in the art.  Szymanski's testimony regarding claim 9 is particularly illustrative:

> Q: Dr. Szymanski, please read claim 9.
>
> A: This is the independent claim.  It states: A system for providing access to mutual fund compliance information comprising: An obtainment subsystem for acquiring securities information from one or more database sources and for extracting compliance information from at least two documents each comprising compliance information for a particular mutual fund.  And the second restriction reads: An accessing subsystem for providing access to extracted compliance information for at least two mutual funds offered to investors by different fund issuers of a computer communication link.
>
> Q: Do you have an opinion as to the validity of that claim?
>
> A: Yes, I do.
>
> Q: And what is your opinion?
>
> A: My opinion that it would be obvious for the person of ordinary skill in the art, this invention would be obvious to the person of ordinary skill in the art.

Trial Tr. vol. 3, 217:9-218:2, Mar. 18, 2009.

Dr. Szymanski failed to identify any art that rendered claims 9-11 obvious, to point out where any of the claims' limitations are disclosed in the prior art, or to show how the

prior art references in combination would make the claim obvious to a person of skill in the art at the relevant time.  General and conclusory testimony "does not suffice as substantial evidence of invalidity."  <u>Koito</u>, 381 F.3d at 1152.

"If, 'after reviewing all of the evidence in a light most favorable to the prevailing party, this court is convinced that a reasonable jury could not have found in that party's favor, we must reverse the denial of a motion for judgment as a matter of law.'"  <u>The Johns Hopkins University</u> v. <u>Datascope Corp.</u>, 543 F.3d 1342, 1348 (Fed. Cir. 2008) (<u>quoting</u> <u>Akamai Technologies, Inc.</u> v. <u>Cable & Wireless Internet Servs., Inc.</u>, 344 F.3d 1186, 1192 (Fed. Cir. 2003) (internal citation omitted)).  NewKirk's evidence as to the obviousness of the claims 9-11 may not surpass the required threshold.

### D.   Motion for a New Trial

When considering a motion for a new trial in a patent case, this Court must follow the First Circuit standards.  <u>DePuy Spine, Inc.</u> v. <u>Medtronic Sofamor Danek, Inc.</u>, 567 F.3d 1314, 1334 (Fed. Cir. 2009) (<u>citing</u> <u>Lucent Technologies, Inc.</u> v. <u>Gateway, Inc.</u>, 543 F.3d 710, 717 (Fed. Cir. 2008)) (reviewing decisions on motions for a new trial under the regional circuit standard).  The district judge "'cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial.'"  <u>Ahern</u> v. <u>Scholz</u>, 85 F.3d 774, 780 (1st Cir. 1996)

(quoting Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988)).  A trial judge may set aside a jury verdict "only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." Cigna Insurance Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 8 (1st Cir. 2001) (quoting England v. Reinauer Transp. Cos., 194 F.3d 265, 270) (internal citation omitted).

      1.    This Court Did Not Err in its Ruling As Matter of Law That Doctrine of Equivalents Infringement Had Not Been Proven

There are "long-standing evidentiary requirements for proof of infringement under the doctrine of equivalents." Hewlett-Packard Co. v. Mustek Sys., Inc., 340 F.3d 1314, 1322-23 (Fed. Cir. 2003).  The party asserting infringement is "required to provide evidence 'on a limitation-by-limitation basis.'" Id. at 1323 (quoting Texas Instruments, Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1566 (Fed. Cir. 1996)).  The evidence must include "particularized testimony and linking argument." Id. (internal citations omitted).  "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1305 (Fed. Cir. 2007) (quoting Texas Instruments, 90 F.3d at 1567).

Where the expert testimony fails to provide the above requirements and, moreover, does not even address the issue of

equivalence of function, the evidence proffered fails to support a verdict in its favor under the doctrine of equivalents.   Id.

NewRiver claims that it is entitled to a new trial because the Court erred in precluding the jury from considering whether Newkirk infringed under the doctrine of equivalents.   Trial Tr. vol. 10, 1326:9-1328:25, Apr. 1, 2009.   NewRiver asserts that its expert testimony was sufficient to establish infringement under the doctrine of equivalents.

Although NewRiver's expert, Dr. Lynn Andrea Stein, discussed how specific claim limitations were met, she failed to provide the "particularized testimony" required to support a determination of infringement under the doctrine of equivalents. Trial Tr. vol. 7, 796:15-803:11, Mar. 24, 2009.   Where, as here, the evidence presented at trial does not suffice, as matter of law, to support a jury verdict under the doctrine of equivalents, judgment could properly be entered.   Hewlett-Packard, 340 F.3d at 1323 (quoting Exxon Chemical Patents v. Lubrizol Corp., 64 F.3d 1553, 1558 (Fed. Cir. 1995) (internal citation omitted).   "A new trial on the issue of infringement under the doctrine of equivalents as to the . . . patent, therefore, is unwarranted." Id.

### 2.   Prejudicial References

Additionally, NewRiver argues that it is entitled to a new trial on the basis of the jury's verdicts on invalidity and

infringement.  For the aforementioned reasons, this motion is denied.  NewRiver also posits that it is entitled to a new trial based on challenger Newkirk's expert witness's improper references to its patent reexamination during the trial. NewRiver maintains that these references created a manifestly unfair trial by undermining the '635 Patent's presumption of validity.

Although the Court acknowledged that Newkirk had initiated an ongoing examination process with the Patent Office, it clearly indicated that the ongoing reexamination process was separate from the trial, the '635 Patent was presumed valid, and that Newkirk bore the burden at trial to prove invalidity by clear and convincing evidence.  Jury Instructions, Trial Tr. vol. 11, 1424:14-17, Apr. 2, 2009.  Moreover, the Court ruled that neither Newkirk nor its expert were permitted to mention the reexamination process.  Trial Tr. vol. 3, 228-29, Mar. 18, 2009. Any prejudicial effect on the jury could and was alleviated by the appropriate jury instructions.  See Fresenius Medical Care Holdings, Inc. v. Baxter Intern. Inc., No. 03-1431, 2006 WL 1330003, at *4 (N.D. Cal. May 15, 2006) (holding that appropriate jury instructions may sufficiently take care of any prejudicial effect of introducing documents to a jury that refer to the disputed patent's reexamination).

3.   The Court Erred in Allowing the Issue of the
     Obviousness Vel Non of Claims 9-11 to Go to the
     Jury

On this point, NewKirk may yet snatch defeat from the jaws

of victory.  If the jury's obviousness finding as to claims 9-11

is vacated, then its finding that NewKirk infringes claims 9-11

comes into effect and NewKirk plummets from the across-the-board

winner of this case to a loser subject to injunction.  For three

reasons, this Court declines to go that far.

a.   The Law of Evidence

Formulated under the Rules Enabling Act, 28 U.S.C.A. §§

2071-2077, the Federal Rules of Evidence have the force of

statutory law.  <u>Daubert</u> v. <u>Merrill Dow Pharm. Inc.</u>, 509 U.S. 579,

587 (1993).  As germane here, these are the controlling rules:

> **Rule 704** . . . testimony in the form of an opinion
> or inference otherwise admissible is not
> objectionable because it embraces an ultimate issue
> to be decided by the trier of fact.
>
> **Rule 705** . . . The expert may testify in terms of
> opinion or inference and give reasons therefor
> without first testifying to the underlying facts or
> data, unless the court requires otherwise.  The
> expert may in any event be required to disclose the
> underlying facts or data on cross-examination.
>
> **Rule 103** . . . (a) Error may not be predicated upon
> a ruling which admits or excludes evidence unless a
> substantial right of the party is affected, and (1)
> Objection.  In case the ruling is one admitting
> evidence, a timely objection or motion to strike
> appears of record, stating the specific ground of
> objection, if the specific ground was not apparent
> from the context . . . .

Here, Dr. Szymanski's testimony fits these rules as the hand

23

the glove.  Dr. Szymanski was a qualified expert who testified that claims 9-11 were obvious (the ultimate issue).  True, he did not provide any basis for his opinion, but he was not then required to under Rule 705.  What is more, after the obligatory early skirmishes over Dr. Szymanski, NewRiver made no objection whatsoever to his opinion testimony on the ultimate issue of obviousness.  One naturally would think (and as a teacher of evidence I certainly thought) this would be enough to bear the burden of going forward and to carry NewKirk to the jury.

Koito and the cases cited therein, however, make clear that, on the issues of anticipation, obviousness, and doctrine of equivalents, the unsupported opinion even of a qualified expert is simply not "substantial evidence" adequate to support a jury verdict on those issues.  381 F.3d at 1152.

Yet the central holding of Daubert runs precisely to the contrary – lower federal courts are not permitted to engraft additional hurdles on the admissibility of evidence beyond those found in the Rules themselves.  Daubert, 509 U.S. at 589.  Despite the express teaching of Daubert, this is exactly what Federal Circuit jurisprudence does, at least on the issues of anticipation, obviousness, and doctrine of equivalents.[4]

---

[4] The Federal Circuit surely has this tension in mind, for it has carefully delineated those areas where the Federal Rules of Evidence operate in their usual fashion.  See Symbol Technologies, Inc. v. Opticon, Inc., 935 F.2d 1569, 1575 (Fed. Cir. 1991) (infringement governed by Federal Rules of Evidence).

Notwithstanding Rules 704 and 705, Federal Circuit case law
renders legally inadequate the opinions of qualified experts on
the ultimate issues of anticipation, obviousness, and doctrine of
equivalents unless the bases therefor are spelled out on the
record.[5]

Although the tension between the Federal Rules of Evidence
(with their statutory authority) and the decisions of the Federal
Circuit (with their precedential authority) seems irreconcilable,
it is not open to a district court to chose one in disregard of
the other.  Both requirements necessarily must be followed.

        b.  Waiver

At first glance, NewRiver appears to have waived its present
objection to Dr. Szymanski's opinion on obviousness.  Fed. R.

---

See also Judge Whyte's most thoughtful opinion in Hynix
Semiconductor Inc. v. Rambus Inc., No. 00-20905, 2009 WL 230039,
at *18-19 (N.D. Cal. Jan. 27, 2009) which gives Koito and the
more recent Cytlogix Corp. v. Ventana Medical Systems, Inc., 424
F.3d 1168 (Fed. Cir. 2005) (written description treated like
anticipation, obviousness, and doctrine of equivalents evidence)
a narrow interpretation since those decisions, unlike Symbol
Technologies, fail to acknowledge the implications of Rule 705.

[5] This disconnect between the Federal Rules of Evidence and
the substantive doctrines of patent law seems to have gone
totally unremarked both by the patent bar and evidence scholars.
I have taught evidence for over a quarter century and have
amassed a considerable library of evidence texts and treatises.
Not one addresses this issue.
    Perhaps this is not surprising, for the requirements of the
Federal Circuit for patent cases are both fair and (in ultimate
application) beneficent.  While they constitute a very real trap
for the unwary, they serve to elevate expert testimony in patent
cases above mere medieval oath swearing.

Evid. 103(a).  After all, once the Court disposed of the
obligatory preliminary skirmishes about his qualifications,
NewRiver interposed no objection whatsoever to the question
eliciting his opinion that claim 9 was obvious.  Trial Tr. vol.
3, 217:9-281:2, Mar. 18, 2009.  Moreover, even when NewRiver
moved for a pre-verdict judgment as matter of law, it simply
noted that Dr. Szymanski's opinion on the obviousness of claim 9
was unsupported; it never cited <u>Koito</u> or provided any developed
legal arguments.[6]  Nor did it challenge the Court's charge in
this regard.  It was only after the verdict that NewRiver
provided the Court with the legal authority supporting its
position.

     But so what?

     Waiver might equally have been argued in <u>Read Corp.</u> v.
<u>Freiday</u>, No. 94-1504, 1995 WL 515227 (Fed. Cir. Aug. 30, 1995)
and <u>Amgen Inc.</u> v. <u>F. Hoffman-La Roche Ltd.</u>, 581 F. Supp. 2d 160,
205 (D. Mass. 2008), <u>aff'd on this ground</u>, <u>Amgen Inc.</u> v. <u>F.
Hoffman-La Roche Ltd.</u>, 580 F.3d 1340, 1383 (Fed. Cir. 2009),
where the judicial action that functionally struck the offending
opinion and withdrew the issue of doctrine of equivalents from
jury consideration followed expert testimony to which no

_____

     [6] In fact, NewRiver never challenged the obviousness opinion
as to claims 10 and 11 at all.  Since these are dependent claims,
however, were the Court to vacate the verdict only as to claim 9,
the ultimate verdict would find claim 9 infringed but claims 10
and 11 invalid as obvious – a legal impossibility.

objection had been made.   But see Symbol Technologies, 935 F.2d
at 1575 (usual waiver rule of Rule 103(a) applies to infringement
claims).

Still, while a belated waiver argument will not save
NewKirk, it factors into the overall picture here.

### c.   Erroneous Jury Charge

I told the jury that they were the sole judges of the facts.
I instructed concerning making credibility judgments and told the
jury they could believe (or disbelieve) any witness who had
testified before them.   I cautioned the jury as to experts (I
refer to them as "opinion witnesses") but told them it was open
to them to believe what the experts, including Dr. Syzmanski, had
said.   I instructed (accurately) as to the legal concept of
obviousness and told the jury to make the determination
concerning whether claims 9-11 were obvious.   NewRiver made no
objection to these aspects of the jury charge.   Yet, on all of
these matters, the jury charge was palpably wrong.   Dr.
Syzmanski's opinion was fatally flawed since its bases were never
explained and the jury therefore was not entitled to credit it.
Absent Dr. Syzmanski's opinion, the jury had no basis to resolve
the issue of obviousness as to claims 9-11 and the matter ought
not have been laid before them.   In short, I botched the jury
charge.

What of it?   argues NewRiver.   In the final analysis,

obviousness is matter of law.  McNeil-PPC, Inc. v. L. Perrigo
Co., 337 F.3d 1362, 1368 (Fed. Cir. 2003).  In a jury case, of
course, this is rarely of any moment beyond ensuring that the
Federal Circuit has the authority for de novo review.[7]  Unlike a
judge who must make subsidiary factual findings before drawing an
ultimate conclusion as to obviousness, Fed. R. Civ. P. 52(a)(1),
a jury draws the ultimate conclusion and the trial judge and
reviewing court are to determine the legal issue on the factual
record, drawing all inferences in favor of the verdict.  Upjohn
Co. v. Mova Pharmaceutical Corp., 225 F.3d 1306, 1310 (Fed. Cir.
2000).  It is, therefore, rare for a trial judge to vacate a jury
verdict on obviousness, having already implicitly ruled that the
record is sufficient to support the ultimate finding.

Here, my mistake was more fundamental.  I **did** consider the
record sufficient to support the jury's finding of obviousness.
It never occurred to me that patent law trumped the Federal Rules
of Evidence on the issue of obviousness.  Now, recognizing my
error, it is clear that the jury's verdict cannot stand.

---

[7] This is not the only area where, notwithstanding the fact
intensive nature of the inquiry, the Federal Circuit simply
announces that an issue is matter of law to insure de novo
review.  It has followed an identical approach with respect to
file wrapper estoppel.  See Festo Corp. v. Shoketsu Kinzoku
Kogyo Kabushiki Co., 344 F.3d 1359, 1368 (Fed. Cir. 2003).  See
also Amgen, Inc. v. Hoechst Marion Roussel, Inc., 287 F. Supp. 2d
126, 134-36 (D. Mass. 2003) (criticizing Festo).

Yet simply to set aside the jury's verdict will not do. Here, I failed to appreciate the applicable legal framework and thus sent the jury off on a wild goose chase.  To disregard their work now and decree a contrary result is to give substance to a good-natured rebuke I once received from a friend, a distinguished British jurist.  "You Americans are hypocrites," he told me.  "You praise the jury and do everything you can to keep it from getting in the way."  Not in this Court.

**E.   What to Do?**

1.    Short Range – Further Proceedings in This Case

Upon this botched and murky record, the Court's duty is clear.  Since the First Circuit standard for granting new trials governs, DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1334 (Fed. Cir. 2009), there must be a new trial before a properly charged jury on the issue of the obviousness vel non of claims 9-11.  Likewise, there must be a new trial on the issue of the infringement of claims 9-11 as well.  This is only fair since the jury here was a fully empowered and engaged body.[8]  It well knew that, as to claims 9-11, it was awarding the ultimate verdict to NewKirk.  To insure the requisite degree of confidence in the overall jury verdict, there must be a new trial both on the issue of the obviousness of claims 9-11 and on the

---

[8] Here the jury was empowered both to take notes and ask questions, Trial Tr. vol. 11, 1428:12-16, Apr. 2, 2009, and it did so.  See, e.g., Trial Tr. vol. 13, 1523:7-17, Apr. 7, 2009.

issue of the infringement of those claims by Newkirk.   In all other respects, the pending motions are DENIED.

It is so ORDERED.

2.   Long Range – Revising This Court's Procedures

The present situation, born of this Court's own confusion about who's on first, is intolerable.   Nevertheless, it is essential to harmonize the Federal Circuit's particular rules governing evidence of obviousness, anticipation, written description, and doctrine of equivalents with the Federal Rules of Evidence overall.   The appropriate guide is found in Judge Lungstrum's thoughtful opinion in <u>Sprint Communications Co. L.P.</u> v. <u>Vonage Holdings Corp.</u>, No. 05-2433, 2007 WL 2572417, at *2 (D. Kan. 2007) (making a pretrial[9] ruling on the adequacy of the opinion testimony concerning obviousness).

That is the course this Court will steer in the future. Specifically, at the earliest possible moment when an expert opinion is proffered on the issues of obviousness, anticipation, written description, or doctrine of equivalents, the Court sua sponte, will rule on its adequacy.   The Court will interpose its ruling even in the absence of objection.[10]   This approach both

---

[9] Judge Lungstrum's views on case management are especially pertinent as he is a recognized authority on the matter, having previously served as Chair of the Judicial Conference Committee on Court Administration and Case Management.

[10] Usually, of course, the law of evidence operates in the shadows.   It plays no role until an objection is made.   Without

fully vindicates Federal Circuit jurisprudence and does no violence to Federal Rule of Evidence 705 which expressly permits the judge to require that the bases for a proffered expert opinion be laid out before the opinion is received.  In this way, only appropriately supported opinion testimony will ever get before the fact-finder (jury or judge).  While the proactive judicial screening of such expert opinions in patent cases will no doubt make them more difficult to try, the ultimate result will exclude junk opinions (the most necessary and salutary goal of the particularized restrictive Federal Circuit jurisprudence) and thereby enhance the centrality and importance of the jury's fact-finding function (rather than marginalizing the jury in the midst of a succession of arcane judicial opinions).  The word ought go out to every American juror that "[one Court] at least thy rights shall guard, here faithful hearts still praise

---

objection, the proffered evidence is received for its full probative value.  See Peterson v. Gaughan, 404 F.2d 1375, 1380 (1st Cir. 1968) (noting that although appellant had right to move to strike testimony presented in district court that was permeated with hearsay, counsel did not make motion; evidence was therefore received, and counsel had "intelligently relinquished that right").  I can think of but three instances where a judge is expected to intervene sua sponte.  These are questions of witness competence, Rule 601 (because no incompetent testimony may be received), application of the rape shield rule, Rule 412 (because prompt judicial action is thought necessary to protect the putative victim of sexual assault), and the parol evidence rule in contract actions (because it is a substantive rule of commercial transactions and not part of the shadow law of evidence).

thee."[11]

> By the Court,
>
> /s/ William G. Young
> WILLIAM G. YOUNG
> DISTRICT JUDGE

---

[11] With apologies to Thomas Moore, <u>The Minstrel Boy</u>.   <u>See</u>
The Clancy Brothers & Tommy Makem, <u>The Minstrel Boy</u>, <u>on</u> The
Rising Moon: Irish Songs of Rebellion (Tradition Records 1959).